Good morning. May it please the court, John Ballas on behalf of defendant David McElmurry. David McElmurry did not get a fair trial on his charges of distributing and possessing child pornography because substantial, inadmissible, highly prejudicial evidence was admitted at trial. I want to focus on two of the main pieces of evidence that were improperly admitted. First, 2006 interview statements from Mr. McElmurry to investigators during a prior case and then a letter that was found at the Maynard Street address that his mother lived at. But before I do, I do want to correct an error I found in my reply brief while I was reviewing it this weekend. And that's at page three where I noted, where I stated on the 2006 interview statements that a transcript was shown to the jury, synced and shown to the jury while clips were being played. When I looked at the transcript again, I can't, it's not clear at all that that is true. And it actually looks like it probably was not true. So there were audio clips actually played during the trial. Forgive me, audio clips of the interview? Yes. Okay, so the jury was listening to those. Yes. And then what did or did not happen? So in my reply brief, I said that transcripts were synced and played to the jury at the same time. And when I was reviewing the transcript again, there's no way to make that kind of finding or determination. It is true that the exhibit list shows that the transcript of those audio clips were admitted and that exhibit list was filed on the last day of trial. And it shows that both the audio clips, the audio recording, Exhibit 50, as well as the transcript, Exhibit 50A, were both admitted at trial. So the jury got the whole transcript? That's what the record shows. And both the interview with investigators as well as the letter to another inmate were both very highly prejudicial and shouldn't have been admitted. With respect to the interview statements, I wasn't so sure on the letter. I read it to the extent I could. It goes on forever. It's really, really long. And while he talks about pictures he gave the person, maybe I just overlooked it, but I didn't see where there were dirty pictures of children necessarily. Well, the letter I think is prejudicial on a number of other ways because it refers to him being on parole. He talks about sending photos to another person in county, which I think is a reference to county jail. Could have been photos of the guy's sister getting out. Well, it's clear that they're prohibited photos or photos he's not supposed to be sending because he says, don't worry, I've made copies of these, and if the photos did not get through, I have copies. So it suggests that it's additional child pornography, but it's not clear exactly what was being sent. There's also some very – So if I – forgive me for interrupting, but so is your argument in the context of this trial that it looked prejudicial as though those would have been pornographic photos? Is that what you're suggesting it? Because I can't find that in the letter either explicitly, so I just want to be clear on your argument. Well, that is on Excerpt to Record page 112, and it does refer to sending photos to someone else in county. Right. And so my point is – and I don't want to take up all your time, but are you just saying that in the context of this trial, that would be prejudicial? Yes. Contingency would assume that it's pornographic material? Absolutely. I think in the context of this trial, it's much more highly prejudicial. I would have thought the opposite. If you send somebody to somebody in county, you expect the jail personnel to open it before the recipient gets it. Well, I mean, I think the point of the reason is, I mean, that you're assuming that the jail is going to catch everything and send it in. I'm just assuming they're going to try. I mean, when he talks about making a backup so don't worry if it doesn't get through, it refers – it suggests to me that it's something very prejudicial. But the most damaging thing in the entire letter, I think, is that Excerpt to Record 116, where he has questions about the laws of having sex with minors. This goes more than just looking at photos. This is actually what I think the majority of people would find to be morally repugnant and definitely should not have been to the jury. We have some Ninth Circuit decisions saying that the age of consent should be lower than 18, which it is in California. Is that what this means? Well, this was a reference to a boy that was 13 years old. We don't have any opinions today and that's okay. Counsel, where is the clearest statement on the record of the prosecutor's reason for proffering these two pieces of evidence? It seemed to be kind of a blurry issue about why the prosecution thought it needed this evidence. I think it's very blurry. The clearest on the 2006 interview to investigators is at Excerpt to Record 12, page 12. That's, in fact, that the judge asked for a proffer, and so the prosecutor does give a proffer and states that it's for encryption purposes and also to show that he likes interest in child pornography and the types and ages. That's the letter? That's the interview to investigators. Oh, sorry, that's the interview. Okay. And what about the letter? Well, on the letter, it's very sketchy because at Excerpt to Record, page 15 to 17, the government says, the prosecutor says they're intending to introduce letters, plural, at trial to show encryption but doesn't specify exactly what letters or what's in the letters. And the judge overrules the defense's objections, and then it just comes out at trial where they show one page of the letter, a part of the encryption, and then underneath it the judge notes at a hearing that it also has a reference to the defendant being in jail, and that should be redacted out. Okay, so you're going right to my problem with trying to understand the record. I know of one record, although at some point they discussed there's going to be more than one. So my first question at trial, was there just the one letter? Yes. Okay, and it's the really long one? Yes. Okay. So I thought I understood that the judge said you need to redact that in part and that the prosecution, either that or the prosecutor made the representation, we're going to redact this to address the defense counsel's concerns. Yes. Sorry. So my next question is, was the redacted letter shown to defense counsel before it was shown to the jury? Well, there's no further discussion in the record of any of that. So there were the exhibit that's admitted in evidence does have these redactions. I think it's natural to expect that they discussed it. The defense attorney should have looked at it. There's no further objection, though? No further objection. Okay. And then one of your arguments is that the judge didn't read it? Yes. The redacted letter? Well, I don't think he read either letter, but he didn't review either letter, either the original letter or the redacted letter. How do we know that? Well, you know that just because of the context of the way it comes in, where the prosecutor says initially before the hearing I'm going to introduce letters plural and then without specifying which one. And the judge makes a ruling right then that he's going to admit the letters. And then after that trial, there's no further discussion about what exactly in the letters that's prejudicial. All the things that I kind of pointed out that it's prejudicial. There is an agreement to be a redacted letter, and it is a redacted letter, and there's no objection made to the introduction of the redacted letter. Is that right? After the redactions, that's correct. There's no objection. There is an objection initially to the letter coming in, but there's no objection afterwards. The same thing on the 2006 interview statements. The judge, it's clear from the record, did not look at the actual interview. He asked the prosecutor for a proffer. That's at page 12. And the prosecutor kind of describes what she wants to get into evidence and the reasons for it. But there's there's nothing in there about the the judge actually looking at the letter. In fact, I think that's that's my my point in this. But all this evidence was extremely prejudicial. And he was addicted to child pornography. Wait a minute. Could you back up just a second? Where's the evidence that he didn't read that 2006 interview? Well, the at page 12. I've got it here. Okay. Before that, both sides filed written pleadings. No one attached the letter or the interview statements to any of their pleadings. When they go into court. So the evidence he didn't read, it wasn't there. It had never been put before him. Yes. Now I've got it. And then at the court when the judge rules, he asked the government for a proffer. So it's clear that by requesting a proffer that he didn't actually look at the letter. I guess I'm not so sure about that. That's why I was asking for the clearest statement of the proffer, because that would start with why do you need it? Well, like I said, there's nothing in the record to indicate at all that he ever looked at it. Okay. And, in fact, he asked the prosecutor to, she describes the statements a number of times, but there's no indication that he ever had a copy of it. Okay. So let's say the judge didn't look at these pieces of evidence for a minute. And if we assume that, it could still be a harmless error if you don't meet the other standards. So would you like to go to that and explain to us why you think the admission was harmful? I think it's harmful. And I think the important thing is to remember the harmless error standard is not whether there is other substantial evidence from which a jury could find beyond a reasonable doubt defendant's guilt, but whether this evidence was so substantial that can the court have a fair assurance that this evidence did not influence the jury's verdict. And under that standard, I think the error is clearly harmful. The government used it in its opening statement, the first words out of its mouth. They used it, emphasized it at trial, and then they emphasized it in closing as well. What's the it? I'm sorry, what? You said emphasized it on those occasions. On the letter, frankly, I read this letter and the peroration seems to be why is it is somebody having a relationship with a blonde 18-year-old bombshell, not age appropriate, but make her 25 and it's okay. And then he says, golly gee, we better haul in all the Texas billionaires. I suppose he's thinking of that in a Cole Smith case. And we have some decisions of our own saying 18 is kind of old for the age of consent. Most jurisdictions it's 16 or lower. I don't see why that's prejudicial. So when you say it was so prejudicial, what is the it? Well, on that part of it. As for the encryption, I didn't see that either. I can't get into my own iPhone without typing my secret code. Well, with respect to the first point there, it talks about that. But a page except the record 116, the paragraph that starts anyway. In the middle of it, he talks about sexual awareness. And he also talks about there's not like one line where a child becomes sexually aware. And, you know, it's a reference to it. And all these advice columns do say that. They say it's a continuum. It's not sudden at 18. I think a number of people would find this to be highly prejudicial, morally repugnant, and that without the judge looking at it and excluding it, it was error. Okay. What else do you have that was highly prejudicial that the judge let in without reading it? Is that your complaint about it, that it was let in without his reading it, or that it's error to let it in? Both. It's a procedural error under Rule 403 not to review the letter and interview statements. It's also substantive error to admit it under Rule 403, over 404D and 403, because it had such marginal probative value given especially the factual basis that was introduced and was very highly prejudicial. I'm going to reserve my remaining 30 seconds. Wait. You didn't finish answering my question about the other it besides the letter. What was the other bad stuff that he let in without reading it? The 2006 interview statements. Particularly what? Well, the most damaging thing in that is on page 161 where investigators asked McElmurry about an e-mail in which he purportedly went to Mexico to meet boys, young boys. I think that is the most damaging thing in that letter. Thanks. Thank you. Good morning. May it please the Court, my name is Alessandra Strano. I represent the United States of America. In this case, the district court did not err by allowing three pieces of evidence, which Defendant McElmurry is how you pronounce his last name, Mr. McElmurry, at trial. First, the. Let me ask you about something in particular. We have an en banc where we said we were very liberal about, well, let me rephrase. What we said was that a judge can't exercise his 403 discretion without reading the material that's supposed to have come in or that came in over objection. And do you agree with your opposing counsel that the judge, in fact, had no opportunity to read the material that came in over objection, so he must not have read it? I do disagree, Your Honor. And it's no fault of counsel because he was not trial counsel. But with regard to the admissions and the plea agreement, the court did review a supplemental S.E.R. 74 where I actually read to the court the portion of the plea agreement which we sought to admit. Sorry, S.E.R. 70? 74, ma'am. Thank you. 74, where I made a proffer to the court and I read what I wanted from the plea agreement. We certainly weren't going to admit the entire plea agreement, but we just wanted the factual basis which the defendant adopted in his prior plea agreement. So the court did review that. With regard to the two ---- Hold on. I don't understand how this answers my question. I want to know, did the judge read that endless letter and the previous interview with the police or didn't he before he decided to admit them? And if I understood your adversary right, he didn't read them because he couldn't have. They were not attached to any of the arguments about whether he should or should not admit them. And now you're saying, no, opposing counsel is mistaken. He did read them. And I don't understand how page 74 of the supplemental excerpt shows that. I wasn't done, Your Honor. I'm sorry. There are several places in the record that I was going to refer the panel to. With regard to the plea agreement, the adoptive admission in the plea agreement, the judge did review that before trial, and that's at supplemental excerpts of record at 74. But the transcript's not in the plea agreement and the letter's not in the plea agreement. I'm going to get to the letter. There's three different pieces of evidence. So with regard to the letter that Your Honor is talking about, the defense ---- the district judge did not review the letter beforehand. I will agree with that. No, it was not attached to any pleading in advance of trial. However, counsel and I, trial counsel and I did go over the exhibits. Counsel had an opportunity to come to my office and review all of the trial exhibits before trial. That's at excerpts of record at 16. Defense counsel had an opportunity to make any ---- This is irrelevant. I'm sorry. I don't mean to be ---- I wasn't asking about what opportunities defense counsel had. I asked about what the judge read before ruling. The judge did not get to review the letter prior to trial. What about the police interview from the previous case? That was offered to the court to review, and that is at SCR 73, and the court did not, based on the proffer of the types of admissions that I sought to admit, did not ---- So the judge did not read those materials before making his Rule 403 decision? He ---- Is that what you're saying? There are three ---- You're giving me a lot of justifications, and they're mixed in with the fact. And right now I'm just trying to find the fact. Well, there are three separate ones. Could you ---- Yes. Could you just go back and discuss each separately? Yes, sir. When you said he did ---- The plea agreement. Yes. You read him the plea agreement. Yes, sir. And so that's what he ruled upon. Correct. Now there are two others, right? Correct. The statements, the clips of certain admissions that the defendant made at the time of his arrest of his prior incident. Audio clips. The audio clips, yes, ma'am. The judge did not review the clips itself. However, he was given a proffer of what clips he wanted to admit prior to trial. Proffer of what clips? We said in that en banc that a proffer from the prosecutor won't do for the exercise of 403 discretion. The judge has to review the material himself. Did he? He did not prior to trial. Or during trial? Was that a ---- Are you indicating he did during trial? He did not do it prior to trial, prior to, before the ---- He heard it when the jury heard it. Correct. Thank you. And that is because, not to annoy Judge Kleinfeld, I'm not trying to give a justification, but that is because defense counsel had an opportunity to review the clips in advance, and so that if there were any objections that counsel wanted to make, he could make because he knew exactly the information we were going to play. It doesn't go to Judge Kleinfeld's point, but ---- And then the third piece is the ---- The letter. The letter. Yes, ma'am. And so I'm a little concerned about the letter. You did say that defense counsel had an opportunity to look at the exhibits. Do you mean after it was redacted, defense counsel saw the letter? He did, Your Honor. He had an opportunity to review it before, and then at ER 105, defense counsel had an opportunity to make whatever redactions, and although not in the ---- I think the answer is yes. And so, but the judge didn't. Correct. Was there an objection to the redacted letter? No, there was not, Your Honor. I thought the defendant had made an overall 403, 404 objection to letting the letter or the previous interview in. He had no objection with regard to the prior audio clips, the admissions that he made. There was no objection whatsoever made to that. With regard to the letter, the objection was lack of foundation. So there was no objection based on 403, 404 or any other thing other than lack of foundation, and that's why it is our position that because the wrong objection was made, it's a plain error standard with regard to the letter. And the plea agreement? The plea agreement, there was a stipulation between the parties, so it is our position that counsel waived his objection because there was a ---- And he stipulated to admit the factual basis, which is the only part of the plea agreement we wanted. And that, I thought you understood that you read to the judge the portion of the plea agreement you wanted, I mean, you sought to admit. Yes, sir. And he ruled that that was admissible? He ruled that that was admissible. And then instead of redacting out the entire plea agreement, counsel and I were able to come to a stipulation that we would just read into the record just the factual basis of the plea agreement. So there was no objection at all to the police interview clips? There was no objection at all to the police interview, yes, ma'am. Were all three pieces of evidence referred to in the opening? I believe so. Certainly the 2006 interview, what I'll call the police interview was, and then the letter, the portion of the letter, which is cited in the transcript, just a few sentences. Okay. Did the judge rule on the admissibility of these three pieces of evidence prior to trial? Not during trial, but prior to trial? He ruled on the admissions of the plea agreement and the 2006 interview prior to trial, because we brought those up as a 404B. It was a motion in limine. Wait a minute. You just told me there was no objection at all as to the interview. Did I get that right? You got that correct, Your Honor. It's at SCR 255 when we sought to admit the certain clips through Agent Vasquez. There was no objection made. During trial? Correct. Okay, so back up, if you would, please. Prior to trial, what was objected to? There's a 404B motion as to what? To the plea agreement and the prior admissions. Motions in limine. The plea agreement and the? And the police interview. And the police interview. So there was a 404B motion, and that was opposed. It was opposed, and then later on he withdrew that, and we came up with a stipulation with regard to the factual basis in the plea agreement. But not as to the interviews? Not as to the interview. However, at trial, he did not object. Okay, but it sounds like he'd already lost the ruling. By the time he got to trial, he'd lost the 404B motion and lost. I would agree with that characterization. However, I think it's defense counsel's responsibility to preserve the record and make that objection. I was lost, and now I'm found. So he objected vociferously before trial to letting in the police interview because it would show propensity and be more prejudicial than probative. And he objected before trial to letting in the letter because it would show propensity and be more prejudicial than probative. After argument, the judge ruled, and he lost. And all of your statements that he never objected, all you mean is he didn't object a second time during trial, having already lost on his objection. That's correct. And you think that you have to object, lose, and then object again when it comes in. Do you have a case that says an issue is waived if you've objected and lost before trial, and then you didn't object again? I do not, Your Honor. Okay. Now I've found the thread. Thanks. I apologize if I certainly didn't mean to mislead, but that is a correct characterization. It's really important for us to understand this sequence, and I had read it differently, so I appreciate the clarification because now you have it the way I understood it from the record, and so I feel better about that. But back to the argument about why you think, I assume you think this was all admitted properly. I do, Your Honor, and here is why. Number one, with regard to the admissions and the plea agreement and the police interview, is what we're calling it, that was properly admitted under both 414, and I understand counsel's argument that it was not moved seriously under Rule 414, but certainly under 404B it was absolutely admissible and appropriate to be admitted under that rule because it showed, and I argued, I'm the one that argued the closing argument, to show identity, lack of mistake, knowledge, et cetera. Okay. So you're talking about the plea agreement, but they stipulated the admission of the plea agreement, right? They did. Okay. And then, forgive me, but I'm having a little trouble. You keep saying it, and there's three pieces of evidence. One of it is the plea agreement that they stipulated, too. Correct. So now you're speaking to which one? The 2006 police interview. Okay. I argued with regard to that particular piece of evidence under 404B, that it was those clips, that evidence went to identity, lack of mistake, knowledge, modus operandi, because there were two issues in this case. This is a case where the government were not able to crack the encryption, so we had to show that there was child pornography on this at least one system. So we had to show, number one, that there was child pornography on at least one system in the defendant's mother's house, and, two, it was the defendant who was responsible for that child pornography. So there were two issues in this case. And the 2006 interview, the police interview, where he talks about his knowledge of computers and the fact that he likes this type of material, went to that it was him who was responsible for it, and, two, that if there were images on the computer, they were encrypted, and he was the one that was responsible for the encryption. Did the jury see pornography? They did. Okay. And so they saw that, even though you couldn't open his computer, if you will, because the police officer on the other end was able to get into the file sharing and, I'll say, download it. Correct. And show the jury that. Correct. Okay. So when you go to identity, you're really saying that you needed to prove backup. You wouldn't have needed any of this evidence if the day they executed the search warrant, you'd been able to open up his computer, right? Correct. And you couldn't? Could not. All right. So you were trying to show that he was the one who put that stuff out there. He was the one that put stuff on there, and there was stuff, your images still on the computer at the time of the search warrant. The only images that we were able to show were the images that Agent Evans was able to download through that file sharing program. Okay. How does the letter help you do that? The letter, the specific portion that we highlighted for the jury, we read into the record, talks about his knowledge and savviness of encryption. Why does that prove anything? I mean, I go to a hobbyist site for people that still use film and develop it in a dark room, and I need to type a password for some reason. I don't know why, to get into it. Apparently, it's secret. So much as, and you need a password or your thumbprint to get into your iPhone. Why is encryption evidence of some criminal conduct? Well, first of all, passwords are completely different than encryption. A password is different. They're ways of hiding things from the wrong eyes. Correct. But the idea of encryption, that this individual had full-volume encryption, that you needed more than just a Windows password to bypass the encryption, that it was someone who was very sophisticated and computer savvy, and these computers, or at least one of the computers, the one that we believe had the child pornography on it, had it on there. So the problem we all have, of course, is what that tells us, I think, is that whoever owned that computer was going to great lengths to make sure nobody else got to go inside and see what it has on it, which, of course, is true of every laptop carried by every federal judge. So, I mean, encryption is just really ubiquitous at this point, and that's why I asked the question, why did you need that? And I can see where there's some relevance. It adds something that this person went through a lot of trouble to hide what was on this computer. Well, unlike most federal judges' computers, I'm going to assume is that when Agent Evans went into the house and was able to play, and the forensic examiner was able to play that Marco Polo game where they unplugged one computer, but the downloads were still happening, we needed to show that the child pornography was on this computer and this computer is encrypted. How does the letter do that for you, though? Because he talks about in that one paragraph, the one that we highlighted, the fact that there is something on there that he didn't want law enforcement to have and that he was light years ahead of hiding material and that we were bumbling idiots, essentially. Right. I don't know what the quote was. And that's why I get back to marginal relevance. I think there's relevance there. And then we get to the 403 analysis. That's why there's some relevance to the letter for your case. Yes? Yes, ma'am. Okay. So then can you tell me about the police interviews, which actually, after all, dated to 2006? Correct. Why did you need those? Again, to show he used that, number one, he liked looking at child pornography, that he viewed child pornography often, so this is something that he was interested in, that he was able to share a file-sharing program, just like in this case, that he had traded, and then his knowledge and use of encryption, and then the types of images that he saved. He talked about his specific age of attraction. So far, that's all propensity. I would disagree, Your Honor. It's years before the crime charge. It was approximately four years before this incident, and it talks about lack of mistake identity, that it was this individual who was responsible for the images on the computer. In 2006, forgive me. Oh, sorry. Go ahead. Thank you. Before you leave that point, in 2006, was it the very same type of modus operandi of sharing pornographic materials and making them available so others could share and see images that he had on his desktop? It was a file-sharing. He used a file-sharing program, and he discussed that in the clips, which we played, just like he did here. It's a different program. No, that was my question. Was it the very same program? No, ma'am. Not quite. Giga Tribe, which is the program that he was using on the incident fence, was not available back in 2006, but a very similar older version was available. Oh, file-sharing. Yes, ma'am. Okay. Yes, ma'am. My question is this. I look at the 2006 police interview, and my impression of it in terms of its prejudicial impact on a jury is quite different from the letter. He says he has an addiction, and at first he says he's addicted to computers, which is fine. But then he says he's been looking at child pornography for 15 years, and he looks at it every day, and he says that his preference is for pornography with children between ages 10 and 14. Now, the prejudicial impact of that is tremendous. As for its probative value, I would say the main probative value is it shows a propensity. It shows the guy has a sexual perversity that causes him to be attracted to child pornography. But that's impermissible evidence under 404, so that relevance cannot be considered. As for the other relevance, I can't see much. I mean, the fact of having been caught in 2006 is somewhat probative the other way. Gee, I got caught doing this thing, and it turns out it's a big deal to the police. I better not do it anymore. I don't understand why the probative value exceeds the unfair prejudice of the four-year-old evidence that he looked at child pornography of children 10 to 14 years old every day four years before. Well, my first argument would be is that would come in under 414, and I understand that I did not. No, 414 is irrelevant because you didn't offer it under 414. Nobody got a chance in district court to argue about 414. Okay. Very well. However, under 404b, and I respectfully disagree that I did raise it. I know that we didn't have any great lengths of it, but it wasn't like this wasn't mentioned in district court to bring in the evidence under 414. However, under 404b, all of these clips went to lack of mistake identity, that it was him that was responsible for the images on the computer on that day on October 19th. It wasn't his mother, and it wasn't somebody else, that it was him. Was there a serious defense put forward that it was his mother, really, who was looking at all this child pornography? The 104-year-old grandmother. That's who it was, the 104-year-old woman. That's right, who's very feisty, by the way. There were no defense put on. However, I think by the questions and the cross-examination, it was one that we could not access the computer. Okay. Okay. Let's assume that you're right. This evidence had probative value outweighing unfair prejudice because it tended to show that the 104-year-old grandmother wasn't the one who did it. Now, let me ask you my next question. If I understand correctly, the judge ruled that this interview from four years before would come into evidence without having read the interview. He did not. How do you get past our en banc and curtain? I don't think I can, except that there was, well, I don't think that there was error here because I think the clips go precisely to where I understand that the proffer was not enough. I understand that. I just don't understand how we can do anything under curtain except reverse when the judge didn't read this before ruling on it. Because there was other evidence available to convict Mr. McElmurry, and I don't think that this was the, it wasn't like this was the only evidence. Plus, there was a limiting instruction that the court gave that these are prior acts, that you can only consider it for lack of mistake. Are you arguing harmless error, counsel, because there's other evidence of guilt? I am arguing that there was, well, with regard to the 2006 inter the police clips that we're talking about, that there was no objection or that it was plain error. Right. But I don't think that that argument is going to go very far with the panel. You just said in response to Judge Kleinfeld's question that, and he said, how can we do anything other than reverse in light of curtain? And I think you said because there's other evidence. That's my question. Are you arguing harmless error because there's enough to convict him without it, or are you? Alternatively, yes, Your Honor. But I think his next question is going to be how do we know this didn't affect the jury in a way that was unfairly prejudicial and sort of how do we ever measure that? I don't think you can. I mean, I don't think you can go back and figure out or understand it. Well, there are cases where we say the evidence was so overwhelming that it couldn't have mattered. But I don't see where that would be so here. I understand your point, Your Honor. The computer never was, you never cracked it, you never opened it. No, Your Honor. I think the forensic examiner testified that he had a chance of winning the Powerball Lottery 37 times in a row before he would be able to crack that password because of full-volume encryption. So the Klee agreement came in on a stipulated basis, and apart from that you had what the detective was able to see out there on the Web, the pornographic images. And in terms of connecting the two, without the letter and without the interview statements from 2006, what did the jury have? The jury had the timing of when Mr. McElmurray came home with his mother, that he came home at approximately 10.50 in the morning, 10 minutes later. The profile that was sharing the files came on 10 minutes later, and then approximately 12 minutes later when the agents hit the house, it was Mr. McElmurray in the house. It was the mother and the grandmother. Mr. McElmurray's soda cup was near the computer. Carl's Jr. cup. The Carl's Jr. cup. There was evidence. It mattered because he had just come from Carl's Jr. Correct. It still hit his mother? His mother was carrying, the testimony from Agent Green was that the defendant was carrying the soda cup and mom was carrying a bag of food. There was only one cup? Only one cup. And the cup was by a computer, and the screensaver on the computer said what? I believe it was Super Dave or Dave PC or something to indicate it was Dave who was controlling the computer. There was evidence that there were various online video games, video games like Civilization IV and Fallout 3, which would indicate that it was the defendant's computer versus the elderly mother. Why? Well. I don't know about those computer games, so. Well, there's my point. Most. I'm not his mother. No. Most women don't. I'm his grandmother. No, no, no. Most, a lot of women. The argument could circumstantially be that as this man in his 30s, he would be more likely to be playing the video games versus his mother or his grandmother. Okay. So back to your burden of proof, which is a really high one. You also said that he had the key, a key on his key ring. Yes, he did. That opened this room where that computer, the D man or Super Dave computer was sitting. Was that the only computer in that room? There were two computers, Your Honor. There was a Dell. Three computers, right? Three computers, two which were running. The desktop computer, which the soda cup was near, was in the main part of the house. My question is, counsel, your brief makes this point about saying he's got the key to that room. Is it the only one that's got the key to that room? There was no evidence that anybody else had the key. The only evidence that came out was that key. So it could go either way. So it's a different question. Is there evidence that he's the only one with the key? There is no evidence. There's evidence that he has a key? Correct. Okay. Thanks. Forgive me, but we have limited time. And then you were trying to answer, but I interrupted you, the question about were there other computers in that room? There were two other computers, one that was running, one that was not. And the one that was running was networked to the one, the desktop with the soda cup. Okay. I'm going to try the question again. The other computers, were they in the same room? Yes. They're all in one room? Yes. There were three computers. One computer is out in the main room. The other two computers, one running, one not, was in the locked room, the one that you needed the key. But the Super Dave one is in the locked room? The one with Super Dave was in the main part of the house. Let me just double check that. They both had screen savers on it. That would be helpful to me because I thought it was just the reverse. I apologize. The screen saver Super Dave, this is on my brief, 13, and excerpts of record 305 to 308. The screen saver Super Dave was on the computer, the desktop computer that was in the main part of the house with the soda cup. Thank you. It was there. Okay. Thank you. I believe I'm absolutely over time. I'm happy to address any other points or submit on the briefs unless the panel has any questions. Are you familiar with the case of Sharer? I am, Your Honor. And does that say that if you introduce under 404 that you can justify it under 414? I don't understand your question, Your Honor. I'm sorry. If the testimony would have been admissible under 414, that you can rely on it even though it was admitted under 404? Yes, I believe that's what I argued in my brief, Your Honor. In other words, it doesn't matter whether it was introduced under 404 as long as it can be justified under 414? Yes, Your Honor. That's why I argued even though the United States was well within its legal right to argue propensity, it didn't. And it stuck to 404B purposes. But if it doesn't come in under 404B and yet it could have been admitted under 414, your position is that it was admitted properly as long as you get over 403? Correct. Thank you. We have a case called LeMay or something that said the judge still has to exercise a lot of discretion under 414, so it isn't just a simple up or down. And without being brought to his attention, it's hard to see how he could be exercising his 414 discretion. Yes, Your Honor. There was LeMay and there was red lightning, and it talked about how 414, there still has to be a balancing that you still have to always go back to 403. Right back to the same problem of Curtin. It's kind of hard to do your discretionary balancing if you don't read the stuff. I understand, Your Honor. Does that mean that Shera doesn't mean anything? No, I don't think it doesn't. I think it does mean something. What does it mean if you have to call the judge's attention to the fact that it could have been admitted under 414? It would sound, from the case Judge Kahnfeld just mentioned, that you couldn't ever justify it under 414 unless you had told the judge that it was under 414, because if he couldn't balance, it doesn't mean anything. I think a balancing needs to occur regardless of whether the government moves for the evidence under 414 or 404B. And the judge did do that, albeit not reading or listening to the clips in advance. So there has to be a balancing test at the end of the day. But the 414 allows you, allows the government to argue propensity, which we did not in this case. I can see where 414 lets you use sexual propensities in ways that propensities to do other bad things can't come into evidence at all. But it looks to me like the way 414 and 403 are reconciled under LeMay in particular is they're both the rule. They're both law. So 414 lets in more propensity evidence when it's about sex, but the judge still has to do the balancing of probative value against unfair prejudice. Am I getting it right or wrong? I believe you're getting it right. And unless the Court has any questions on anything else, I'm prepared to submit on papers. Thank you. I just wanted to clarify one point in the record regarding defense counsel's stipulation to the factual basis. In Excerpt of Record, page 92, he does say, the defense counsel, that since the factual basis is coming in, I'm willing to stipulate that it come in as a factual basis. And the discussion before that is what was the best way of presenting it to the jury. And the prosecutor talked about having an agent read it, and so he says he'll stipulate to the factual basis. But it's clear he's not withdrawing the objection, and he says it's because since it's coming in, the judges rule. Counsel, I'd like to give you an opportunity to answer a question that I have about this prior, I'm going to call it prior bad acts evidence, the 2006 evidence. That would be the plea agreement. But also the clips, the audio clips, because this individual wasn't just charged with possessing child pornography. It's not just a propensity to like child pornography. He was also charged with this, with wanting to share it with others, and being part of a community of people online, a community of people who share child pornography, apparently. So why wasn't that sufficiently probative? It seems to me that that sharing, that distribution, makes this much more probative evidence. I think some clips for that purposes might have been, had some probative value in terms of encryption, use of computers. But here what happens is the clips that are shown talks about him being addicted to child pornography, watching it for 15 years, looking at it on an almost daily basis, and went way beyond any of those purposes. And it was never presented to the judge in advance to look at, determine whether it was unduly prejudicial under Rule 4.3. Thank you. Thank you. Thank you both. The case disargued will be submitted.
judges: Reinhardt, Kleinfeld, Christen